AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of                  )
*(Briefly describe the property to be searched*    )
*or identify the person by name and address)*      )      Case No.   23MJ1791
                                                )
Silver iPad                                     )
("Target Device")                               )
2023250100013201-0009                           )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC Sec. 1591 | Sex Trafficking Through Force, Fraud, or Coercion |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Eric Ponce*
_____
*Applicant's  signature*

Eric Ponce, HSI Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date:   _____May 18, 2023_____

*Allison H. Goddard*
_____
*Judge's signature*

City and state:  _____San Diego, California_____

Hon. Allison H. Goddard, United States Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Eric Ponce, Special Agent with Homeland Security Investigations, being duly sworn, hereby state as follows:

### INTRODUCTION

1.      I make this affidavit in support of an application for a search warrant to search the following electronic device, as described in Attachments A, and seize evidence of crimes, specifically, violations of Title 18, United States Code, Sections 1591, as more particularly described in Attachment B:

Silver iPad seized under FPF number 2023250100013201-0009 (**Target Device).**

This search supports an investigation conducted by Homeland Security Investigations (HSI), in conjunction with the San Diego Human Trafficking Task Force (SDHTTF), into Clifford STOKES Jr. (**STOKES**) who is suspected of committing one or more of the crimes mentioned above. A factual explanation supporting probable cause follows.

2.      The **Target Device** was seized on January 17, 2023, following the arrest of **STOKES** for sex trafficking by force, fraud, or coercion in violation of Title 18, United States Code, Section 1591; and the rescue and recovery of two sixteen-year-old juvenile females (**JF1, JF2**) and a nineteen-year-old adult female (**AF1**) that occurred in January of 2023.  The **Target Device** is currently in the possession of Homeland Security Investigations, 880 Front Street, San Diego, California 92101.

3.      Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachments B.

4.      The information set forth in this affidavit is based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of obtaining a search warrant for the **Target Device**, it does not set forth each and every fact that I or others have learned during the course of this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5.      I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code.

6.      I am a Special Agent (SA) employed by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I am a graduate of the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia and I have been employed as a SA since March 2018. I have been trained to conduct criminal investigations for multiple violations of federal and state laws including, but not limited to alien smuggling and narcotics smuggling, human trafficking, weapons trafficking, and organized criminal activity.  I am currently assigned to the Border Enforcement Security Task Force (BEST), Human Smuggling/Trafficking Group specializing in a variety of criminal and financial investigations. My primary responsibilities include investigating human smuggling/trafficking and narcotics violations.  These

investigations include, but are not limited to, investigations involving wire fraud, money laundering, financial crimes and bulk cash smuggling.

7.     Prior to becoming a special agent, I was employed as a U.S. Customs and Border Protection Officer (CBP) for six years. As a CBP officer I intercepted and prevented the entry of undocumented non-citizens and illegal drugs crossing San Diego Ports of Entry. As a CBP Officer I conducted law enforcement field operations, interviews, made arrests and prepared administrative and criminal cases related to the violation of immigration and narcotics laws.

8.     Since March 2018, I have been involved in operations alongside the SDHTTF where I have participated in investigations involving the exploitation of children and adults for illicit commercial sex activity, human trafficking, forced labor, various illegal activity of criminal gang members and have performed a variety of related investigative tasks.

9.     My experience as an HSI Special Agent has included the investigation of cases involving the use of computers and the internet to commit crimes. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer evidence seizure and processing, and various other criminal laws and procedures. I have personally participated in the execution of search warrants involving the search and seizure of cellular telephones and other electronic devices.

10.    Through my training, experience, and consultation with other law enforcement officers, I have learned that:

a.     Individuals involved in illicit commercial sex maintain records, including electronic files, related to their illicit business on computers and computer servers hosting internet applications such as electronic mail (email) and personal social networking web pages;

b.      Individuals involved in illicit commercial sex often solicit clients through electronic advertisements and other media, such as Craigslist, MegaPersonals, Skipthegames, and other social media sites accessed on cellular telephones and computers;

c.      Individuals involved in illicit commercial sex maintain records of correspondence relating to client contact information as well as travel and lodging arrangements involved in such illegal activity;

d.      Individuals involved in illicit commercial sex maintain documents and files containing names of associates and/or coconspirators involved in prostitution;

e.      Individuals involved in illicit commercial sex maintain financial records, bank statements, money orders, money order receipts, and cash that are evidence of payments made in conjunction with prostitution;

f.      Individuals involved in illicit commercial sex use cellular telephones, tablet, desktop, removal hard drives and flash drives, and notebook computers and maintain these items on their person and/or in their residences and/or vehicles. Individuals involved in illicit commercial sex use cellular telephones, tablet, notebook computers, and removable storage media to increase their mobility, coordinate illicit activities, and to provide pimps and prostitutes with instant access to phone calls, voice messages, text messages, instant messaging (IM) and internet based correspondence. Individuals involved in illicit commercial sex will use multiple cellphones, tablets, notebook computers, and phone numbers in order to maintain contact with other pimps, prostitutes, complicit businesses, and clients. These electronic devices contain wire and electronic data concerning telephonic contact records, text messages, and electronic mail messages with co-conspirators and clients, as well as telephone books containing contact information for co-conspirators and clients. Individuals involved in illicit commercial sex also utilize digital cameras, cellular telephones, desktop and notebook computers with photograph and video capabilities to take photographs and videos of themselves as well as other coconspirators for the purpose of electronic advertising and promotion of prostitution. Moreover, I know that digital evidence can be stored on a variety of systems and storage devices including: hard disk drives, DVD ROMS, pagers, money chips, thumb drives, flash drives, and portable hard drives;

g.     Individuals involved in illicit commercial sex use social media sites like Facebook or Instagram to find clients and prostitutes. They use Facebook messaging applications to communicate with prostitutes and customers to increase their mobility and coordinate illicit activities. Individuals involved in illicit commercial sex will often use multiple social media accounts in order to maintain contact with other pimps, prostitutes, complicit businesses, and clients. These social media accounts contain electronic data concerning instant messaging, electronic mail and social media addresses of co-conspirators and clients, including contact information for co-conspirators and clients. Individuals involved in illicit commercial sex also utilize social media to store and display, commonly known as posting, photographs, videos, and text of themselves as well as other co-conspirators for the purpose of electronic advertising and promotion of prostitution.

11.     Based upon my experience and training, and the experience and training of other agents with whom I have communicated, the evidence of illegal activity described above in paragraphs "a" through "g" is maintained by individuals involved in illicit commercial sex in property that they and their associates live in and operate as well as on online accounts including email accounts, which can be accessed on computers and cellular telephones.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

12.     On January 17, 2023, Task Force Officers (TFO) assigned to the San Diego Human Trafficking Task Force (SDHTTF) were working Operation Better Pathways, dedicated to recovering sex trafficking victims. During the course of the operation, TFO's working at the Department of Justice office were monitoring cameras and radio traffic from surveillance.

13.     At about 5:21 pm, Acting Task Force Officer (ATFO) Lawrence Durbin observed a white Toyota Corolla bearing Arizona license plate B2A0YH, herein

referred to as Toyota, stopped near the intersection of Dalbergia Street[1] and Woden Street. Two females, a 19-year-old adult (AF1) and a 16-year-old juvenile (JF1) wearing revealing clothing exited from the rear of the Toyota on to the street and the Toyota drove out of sight. AF1 and JF1 began walking westbound (north/west) on Dalbergia waving at vehicles. A short time later, TFO's observed them on surveillance cameras. The females walked a short distance, until they observed a marked police vehicle with its lights on stopped along the south curb line. AF1 and JF1 abruptly turned around and ran out of the area back towards Woden Street and out of view. ATFO Durbin regained observation of AF1 and JF1 who ran directly to the Chevron gas station located at 3774 Main Street in San Diego, California. When the females got to the gas station, JF1 used her cellular telephone to call someone. At approximately 5:23 pm, the Toyota arrived at the Chevron and the two females entered the vehicle. Based on AF1 and JF1's dress, the fact they immediately ran away when they observed law enforcement, which is uncommon, the area being a known spot for street-based prostitution, the fact they were walking in the street and not the sidewalk, were waving at passing vehicles and they were wearing little clothing on a cold evening, ATFO Durbin believed the two females were attempting to engage in prostitution.

14.   ATFO Durbin and other surveillance units followed the vehicle as it fled the area, northbound. The vehicle eventually began traveling back southbound and was ultimately stopped by Officers J. Dawson #7469 and C. Diaz #7677 who were driving in a marked San Diego Police vehicle. The vehicle yielded near the intersection of Main Street and 29th Street. Officers' Diaz and Dawson detained the four passengers, Clifford STOKES Jr. (driver), a 16-year-old juvenile (JF2) (front

---

[1] Dalbergia St. is a prolific area in San Diego County known for street-based commercial sex trafficking.

passenger), and AF1 and JF1 (rear passengers). Officer Diaz went to the Toyota to get shoes for one of the females who was bare foot and upon opening the door observed a loaded firearm on the front passenger's floorboard, in plain sight. Officer Diaz recovered the firearm and found it was loaded with a round in the chamber. Officer Diaz and Officer Dawson arrested STOKES and AF1 on state charges for violations of section 653.23PC – Supervision and 25610 PC - possession of loaded firearm in vehicle.  JF1 and JF2 provided Officer Diaz and Officer Dawson with false names and date of births in an attempt to make the officers believe they were adults. Officer Dawson and Officer Diaz believed that JF1 and JF2 were minors based on their appearance, the fact they did not have any identification with them, and no matching identities could be located for them in law enforcement database searches.  Officer Dawson and Officer Diaz detained JF1 and JF2 per section 305(a) of the California Welfare and Institutions Code. During a search incident to arrest STOKES' wallet was found to have a hotel key for the Red Roof Plus+. FBI SA J. Schick was casually talking to AF1 while at the scene who stated they were staying at the Red Roof hotel.

15.    At about 6:28 pm, TFO M. Wiener responded to the Red Roof Plus+, a hotel located 394 Broadway in Chula Vista, CA 91901 and spoke with staff members. TFO Wiener found that AF1 had rented Room 404 at the hotel on January 16, 2023 and January 17, 2023 and listed the Toyota's license plate as her vehicle. TFO Wiener reviewed the hotels surveillance camera footage and observed AF1, STOKES, JF1 and JF2 all entering the room shortly after AF1 obtained the room.

16.    At about 8:00 pm, during interviews with law enforcement, JF1 and JF2 both identified themselves correctly and were found to be reported missing juveniles from Arizona. Furthermore, JF1 advised her cellular phone was left at the hotel room.

17.    TFO A. Amador and TFO W. Beers conducted a recorded interview with AF1. Just after introducing themselves, AF1 spontaneously said, "I want to talk to you guys, I want to tell you guys the truth" and stated she originally lied on scene because she was scared of STOKES, who she knowns only as "Cash".  AF1 began crying and said "Cash" "forced me into this life". AF1 further stated that on today's date while at the Red Roof in room 404 she told Cash she did not want to work as a prostitute, as she has never done it in the past. Today, Cash violently smacked her on the left side of her face with an open hand because she did not want to work as a prostitute. During the altercation Cash grabbed her neck and violently shook her, at some point he bit her on her left lower quad. TFO Beers and Amador could visibly see the bite mark during the interview. At around 1:00 pm today, after telling Cash no six times, he (STOKES) forced her (AF1) to give him oral copulation in front of JF1 and JF2. AF1 advised that Cash ejaculated on the bed in the hotel room. AF1 also advised that Cash was the only person to possess the firearm found in the Toyota and saw him trying to hide the firearm while he was pulled over by SDPD.  Cash had previously used the gun to hit JF2 on the back of her head to show his authority and dominance to the girls. After the aforementioned fight occurred Cash forced AF1 to go work as a prostitute as she feared more physical harm would occur. Cash gave AF1 a cellular phone and provided clothing which he instructed her to wear while working as a prostitute. Cash instructed AF1 of sexual acts she would be required to perform and the cost she would charge. Cash told her she could not come back/be done until she earned "a band" ($1,000). AF1 said she and the other girls were driven to the area of Dalbergia Street when he told her to get out of the car and told her he would hit her with the car if she did not work as a prostitute.  AF1 advised that her phone was left in their hotel room and that when they were stopped by police Cash told her not to talk to the police. AF1 also provided written consent to a search of the room.

18.    At approximately 11:10 pm, SA A. Marcellus and Investigator K. Buchholtz conducted a post-Miranda interview of STOKES.  STOKES was advised of his Miranda Warning verbally and in writing and STOKES agreed to speak with investigators without a lawyer present.  The following is a summary of the interview and not a verbatim account.

19.    STOKES stated that AF1 is his girlfriend, and they came to San Diego with her friends, JF1 and JF2, from Arizona.  STOKES stated that they were all staying together at the Red Roof Inn, AF1 paid for the room.  STOKES stated that today, January 17, 2023, he went to go visit family and when he got back to the room only JF2 was there.  Shortly thereafter, AF1 and JF1 called STOKES and asked him to pick them up.  STOKES stated that he picked them up near a gas station and let them out again.  STOKES stated that AF1 and JF1 called him and asked to be pickup up again due to law enforcement in the area.  Initially, STOKES claimed he was unaware of a firearm in the vehicle.  When asked if his fingerprints would be found on the firearm STOKES changed his story and claimed that he did touch the firearm.  STOKES admitted that he did know about the firearm, he claimed that he did not know who it belonged to, but he (STOKES) had picked it up before.  When asked about the other two females, JF1 and JF2, STOKES stated that he did not know JF1's name and he referred to JF2 as "E".  SA Marcellus asked STOKES how old he believed the three females to be, and STOKES replied that he knows that AF1 is 19 and thinks JF2 is 16 or 17 years old because she acts young.  STOKES stated that he was unaware of JF1's age.  STOKES was asked about online commercial sex ads and he stated that he has heard about "Personals" or internet-based sex ads.  STOKES stated that he has previously used the moniker "Cash" up until last year.  STOKES stated that his Instagram username is "babycash" and his Facebook username is "FMTCash".  STOKES informed investigators that his cell phone number is (480) 304-2025.

20.     AF1 gave TFO's consent to search her cell phone.  A cursory search of her phone revealed a contact labeled "Daddy"[1], this name is associated with phone number (480) 304-2025, the same number that STOKES identified as belonging to him.  TFO identified a recent text message exchange between STOKES and AF1 from January 15, 2023 to January 16, 2023:

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

---

[1] Daddy is slang term that victims of sex trafficking use to refer to their pimp/trafficker.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22    21.    Based on my training and experience I know that this text message

23 exchange is indicative of a pimp/trafficker attempting to recruit someone into sex

24 trafficking.  For example, when STOKES states "It's not hard and y'all all around

25
26
27

the same age and they getting a bag and u having issues I turned them into 304s[1] it's not hard to turn you into one", he is telling her that sex trafficking is not difficult and that he has already successfully trafficked other females around her same age. Based on my training and experience, I know that "they getting a bag" is referencing illicit proceeds earned through commercial sex.

22. AF1 responds to this message by stating, "I'm sorry daddy for only bringing in 200 I hope your not mad I really was out there tho putting myself out there". Based on my training and experience, I know that AF1 is apologizing for not earning enough money and is worried that STOKES might be mad. AF1 goes on to state that, "It was jus rough because then (sic) tricks[2] were either broke n ain have 100". Based on my training and experience, I know that AF1 is attempting to explain why she did not earn enough money through commercial sex. AF1 further stated, "And I know I coulda done betta and im sorry. Im actually scared yu finna be mad at meh". Based on my training and experience, I know that AF1 is trying to apologize to STOKES and expresses the fact that she is in fear of retaliation from him.

23. JF2's silver iPad (**Target Device**) was discovered during the search of the Red Roof Hotel room. JF2 stated during her interview that she had a white iPhone but it was later determined to be the silver iPad. Stokes stated during his interview that JF2 does not have a phone and only has a "tablet". The silver iPad (**Target Device**) was subsequently seized by Homeland Security Investigations.

## METHODOLOGY

24. It is not possible to determine, merely by knowing the mobile electronic device's make, model and serial number, the nature and types of services

---

[1] Based on my training and experience, I know that 304 is slang for a prostitute. The numbers 304 when typed into a digital calculator and read upside down read "hoe".
[2] Tricks is slang for a sex buyer, also referred to as a "john".

to which the device is subscribed and the nature of the data stored on the device. Mobile electronic devices, including cellular telephones and tablets, can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers and installable software now allow for their subscribers and users to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many mobile electronic devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some mobile electronic device models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25.    Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and its memory card will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## GENUINE RISK OF DESTRUCTION OF DATA

27.    Based upon my experience and training, and the experience and training of other law enforcement agents with whom I have communicated, electronically stored data may be permanently deleted or modified by users possessing basic computer skills. In this case, no genuine risk of destruction exists as the property to be searched is already in the custody of law enforcement personnel.

## PRIOR ATTEMPTS TO OBTAIN DATA

28.    There have been no prior attempts to obtain this data.

//
//
//
//
//
//
//
//
//
//
//
//
//

**CONCLUSION**

29.     Based on the foregoing, I believe there is probable cause to believe items that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, 18 U.S.C. § 1591, as described in Attachment B will be found in the properties to be searched, as provided in Attachment A.


_____
Eric Ponce
Special Agent
Homeland Security Investigations


Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 18th day of May 2023.


_____
HONORABLE ALLISON H. GODDARD
United States Magistrate Judge

# **ATTACHMENT A**
# **ITEMS TO BE SEARCHED**

The property/items to be searched is/are described as follows:

Silver iPad seized under FPF number 2023250100013201-0009 **(Target Device).**

Target Device is currently being held at the San Diego HSI Office located at 880 Front St. Ste. 3200 San Diego, CA 92101.

1
2

**ATTACHMENT B**
**ITEMS TO BE SEIZED**

3
4
5
6

Authorization to search the cellular telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones. The seizure and search of the cellular telephones will be conducted in accordance with the affidavit submitted in support of the warrant.

7
8
9
10

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, photographs, audio files, video, telephone numbers, contact information, web browsing history, documents, data stored within applications, and location data, for the period of <u>December 17, 2022 up to and including January 17, 2023</u>:

11
12
13

    a.      tending to indicate efforts to recruit, entice, harbor, transport, provide, obtain, or maintain a person for the purposes of engaging in a commercial sex act;

14
15

    b.      tending to identify accounts, facilities, storage devices, and/or services— such as email addresses, IP addresses, and phone numbers—used to facilitate human trafficking;

16
17

    c.      tending to identify co-conspirators, criminal associates, or others involved in human trafficking;

18
19
20

    d.      tending to identify funding sources, bank accounts, and financing methods involved in human trafficking;

21
22

    e.      tending to show efforts to solicit commercial sex acts on websites including but not limited to backpage.com or craigslist.com;

23
24

    f.      tending to identify travel to or presence at locations used for commercial sex acts;

25
26
27

    g.      tending to identify the user of, or persons with control over or access to, the subject phone; and/or

h. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 18, United States Code, Sections 1591.**

The seizure and search of the cellular phones shall follow the procedures outlined in the methodology section in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phones may be searched for the evidence above.

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

---

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A
## ITEMS TO BE SEARCHED

The property/items to be searched is/are described as follows:

Silver iPad seized under FPF number 2023250100013201-0009 **(Target Device).**

Target Device is currently being held at the San Diego HSI Office located at 880 Front St. Ste. 3200 San Diego, CA 92101.

**ATTACHMENT B**
**ITEMS TO BE SEIZED**

Authorization to search the cellular telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones. The seizure and search of the cellular telephones will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, photographs, audio files, video, telephone numbers, contact information, web browsing history, documents, data stored within applications, and location data, for the period of <u>December 17, 2022 up to and including January 17, 2023</u>:

    a.      tending to indicate efforts to recruit, entice, harbor, transport, provide, obtain, or maintain a person for the purposes of engaging in a commercial sex act;

    b.      tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate human trafficking;

    c.      tending to identify co-conspirators, criminal associates, or others involved in human trafficking;

    d.      tending to identify funding sources, bank accounts, and financing methods involved in human trafficking;

    e.      tending to show efforts to solicit commercial sex acts on websites including but not limited to backpage.com or craigslist.com;

    f.      tending to identify travel to or presence at locations used for commercial sex acts;

    g.      tending to identify the user of, or persons with control over or access to, the subject phone; and/or

h.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 18, United States Code, Sections 1591.**

The seizure and search of the cellular phones shall follow the procedures outlined in the methodology section in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phones may be searched for the evidence above.